## *In re* HUDSON

Docket No. 246373. Submitted June 2, 2004, at Lansing. Decided June 24, 2004, at 9:20 A.M.

The Van Buren Circuit Court, Family Division, Frank D. Willis, J., placed Amanda Hudson, a minor, in agency care outside her home after taking jurisdiction over her for delinquent conduct. Van Buren County petitioned the court to require Hudson's stepfather, James A. Menter, to pay for the costs of Hudson's care and legal representation. The petitioner contended that Menter was Hudson's custodian for purposes of MCL 712A.18(2). The court determined that Menter qualified as a custodian under the statute and that Menter was responsible for the costs. Menter appealed.

The Court of Appeals *held*:

1. The term "custodian" is defined in the Uniform Transfers to Minors Act, MCL 554.521 *et seq.*, has a specialized meaning in the law, and that meaning relates to the acceptance of the assets of and management of the finances of a minor. Because Menter was not even remotely a "custodian" in the financial sense, he was not responsible for reimbursing the petitioner.

2. Under MCL 769.1(7), a custodian has the legal duties to provide financial, emotional, and physical care and protection for a child. In this case, Hudson's father had died, and Menter had not adopted Hudson, had participated minimally in her upbringing, and did not marry Hudson's mother until Hudson was ten years old. When the petition for removal from the home was filed, Hudson was nearly sixteen. Under these circumstances, Menter was not Hudson's custodian and was not liable for the costs.

Reversed.

HOEKSTRA, P.J., dissenting, stated that the definition of "custodian" in the Uniform Transfers to Minors Act (UTMA) is unrelated to its use in the Probate Code because the provisions address completely different legislative purposes. The word "custodian" has no single specialized meaning in the law because of its use in the UTMA. The question whether the respondent was responsible for costs under MCL 712A.18(2) is a fact question reviewed for clear error. Although never having adopted the child, the respon-

dent provided for the child from an early age, lived with the child's mother from the child's infancy, and fed, clothed and sheltered the child when the child was a baby. Respondent participated in the discipline of the child and attended the child's school activities. Under these circumstances, the trial court's ruling should be affirmed because that court did not clearly err in finding that respondent, a stepparent, was a custodian of the minor child.

*Jeffrey D. Van Leuwen* for the respondent.

Before: HOEKSTRA, P.J., and O'CONNELL and DONOFRIO, JJ.

O'CONNELL, J. Respondent stepfather appeals of right the trial court's order requiring him to pay the cost of his stepdaughter's care and legal representation. The stepdaughter lived with her mother and respondent. In her teen years, the stepdaughter began exhibiting destructive behavior. On one occasion, she set fire to a toilet paper roll in one of her school's bathroom stalls. The incident led to the trial court taking jurisdiction over her. Afterward, authorities repeatedly found her in possession of alcohol, and she began getting into physical altercations with her mother. A petition alleging physical abuse by the mother resulted from these altercations.

Shortly after the second time police caught the stepdaughter in possession of alcohol, respondent violently erupted and physically abused her. On the basis of a petition containing this allegation, the trial court ordered respondent to leave the home and later followed up with an order that placed the child with relatives. At the conclusion of the case, the trial court found that respondent qualified as a "custodian" under MCL 712A.18(2), so it required him to reimburse petitioner for the cost of the child's care. We disagree with this conclusion and reverse. The issue is one of statu-

tory interpretation, so we review it de novo. *In re MCI*, 460 Mich 396, 413; 596 NW2d 164 (1999).

When a trial court commits a juvenile to agency care outside the juvenile's home, MCL 712A.18(2) requires that the cost of care be reimbursed "by the juvenile, parent, guardian, or custodian . . . ." This statute and MCL 712A.6 confer jurisdiction on the court to obtain reimbursement from certain adults in the child's life regardless of their culpability for causing the court to remove the child. While the Legislature does not define "custodian" in the probate code, it narrowly defines the term for purposes of the Michigan Uniform Transfers To Minors Act, MCL 554.521 *et seq*. Under that statutory scheme, one does not become a "custodian" without acquiring, under clearly articulated circumstances, legal possession of a minor's property, which is then held in trust for the child. MCL 554.523; MCL 554.533; MCL 554.537. Accepting the property means accepting all the attendant fiduciary obligations that normally attach to such a position of responsibility. MCL 554.537. "Custodian," therefore, has a specialized meaning in the law, and we will not ignore that meaning without a sound basis to believe the Legislature intended something different. The trial court did not consider the effect of this definition, but we find that it directly relates to the monetary issue presented, especially when the statute holds the juvenile, as well as the juvenile's parents and guardians, responsible for reimbursement. Because respondent was not even remotely a "custodian" in the financial sense, he was not responsible for reimbursing petitioner.[1]

---

[1] We acknowledge that in deciding *In re Huisman*, 230 Mich App 372, 379-381; 584 NW2d 349 (1998), we defined the term "custodian" differently, but that case no longer carries any precedential weight, as it was fundamentally overruled by *In re Trejo Minors*, 462 Mich 341, 352-354; 612 NW2d 407 (2000).

We note, however, that we would reach the same conclusion even if we found that "custodian" referred to custody of the child rather than custody of the child's property. As illustrated by the descriptions in MCL 554.537, incumbent in the term "custodian" is a special legal responsibility. If applied directly to the child, the designation inherently includes the legal duties to provide financial, emotional, and physical care and protection to the child. Cf. MCL 769.1(7). We find no basis in our jurisprudence to assign such a duty to stepparents across the board. We find the trial court's application of the presumed duty especially incongruous in this case, where, despite the death of the child's father, respondent refrained from adopting her, participated minimally in her upbringing, and did not marry the child's mother until the child was ten years old. Further, the "child" in this case was nearly sixteen years old when the petition for her removal from the home was filed. Under these circumstances, the trial court improperly designated respondent the child's "custodian." Respondent was not required, on that ground, to reimburse petitioner.

Reversed.

DONOFRIO, J., concurred.

HOEKSTRA, P.J., *(dissenting)*. I respectfully dissent.

I disagree with the majority's reliance on the Michigan Uniform Transfers to Minors Act (UTMA), MCL 554.521 *et seq.*, for guidance in determining who is a custodian under MCL 712A.18(2), a provision of the Probate Code concerning juveniles. There is no reason to think that the word "custodian," as used in the UTMA and in the Probate Code, is related or needs to be harmonized because these provisions address com-

pletely different legislative purposes. Notably, the title of the UTMA states, in part, that the act was established "to regulate certain transfers of property to minors" and "to make uniform the law regulating certain transfers of property to minors."[1] In contrast, "[f]airly characterized, the paramount purpose of the juvenile section of the Probate Code is to provide for the well-being of children." *In re Macomber*, 436 Mich 386, 390; 461 NW2d 671 (1990). More specifically, " '[t]he purpose of [MCL 712A.18(2)] is to obligate parties to help shoulder the costs the state incurs during the period that a child is ordered into out-of-home placement.' " *In re Reiswitz*, 236 Mich App 158, 165; 600 NW2d 135 (1999), quoting *In re Brzezinski*, 214 Mich App 652, 676-677; 542 NW2d 871 (1995) (GRIFFIN, P.J., dissenting).[2] Further, I find no basis for the conclusion that the word "custodian" has a specialized meaning in the law by virtue of its definition and use in the statutory scheme of one statute, the UTMA. See MCL 8.3a.

If a word is not defined in the statute, it should be understood according to the common and approved usage of the language, taking into account the context in which the word is used. *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 8; 614 NW2d 169 (2000). The context or setting in which a word or phrase is used gives it meaning. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420-421; 662 NW2d 710 (2003). Here, MCL 712A.18(2) requires that the cost of care of a juvenile outside the juvenile's own home and

---

[1] "Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope." *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991); *Lake Isabella Dev, Inc v Lake Isabella*, 259 Mich App 393, 402; 675 NW2d 40 (2003).

[2] The Michigan Supreme Court summarily reversed this Court's decision for the reasons stated in Judge GRIFFIN's dissent. *In re Brzezinski*, 454 Mich 890 (1997).

under agency supervision be reimbursed "by the juvenile, parent, guardian, or custodian . . . ." Used in this context, it is apparent that the word "custodian" is to be understood as being one who has responsibility for the care and support of the child. This meaning is entirely consistent with the common definition of the word "custodian," see *Random House Webster's College Dictionary* (1992) ("a person who has custody; keeper; guardian") and is indicated in light of its use in the juvenile section of the Probate Code.

The determination that respondent was the child's custodian for the purpose of requiring reimbursement under MCL 712A.18(2) is a fact question. This Court reviews a trial court's determination of a fact question for clear error. MCR 2.613(C). Here, the record reflects that respondent, although never having adopted the child, has provided for the child from an early age. Respondent and the child's mother began living together, albeit unmarried,[3] from the time of the child's infancy, and fed, clothed, and sheltered the child when she was a baby. Further, respondent has participated in the discipline of the child and has attended the child's school activities. On this record, I conclude that the trial court did not clearly err in finding that respondent, a stepparent, was a custodian of the minor child.

I would affirm.

---

[3] Apparently respondent and the child's mother married in 1994 or 1995.